Filed 3/24/26  Tilley v. Moreno CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BONNIE TILLEY, as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> OMAR MORENO, Individually and as Trustee, etc., et al., <br><br> Defendants and Respondents. | F089775 <br><br> (Super. Ct. No. BPB-18-003127) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Brett V. Myers, Commissioner.

Botti & Morison Estate Planning Attorneys; Law Offices of Richard A. Marcus and Richard A. Marcus for Plaintiff and Appellant.

Darling & Wilson and Joshua G. Wilson for Defendants and Respondents.

-ooOoo-

Appellant Bonnie Tilley, who filed a petition and amended petition pursuant to Probate Code section 850, subdivision (a)(3)(B), appeals from an April 2, 2025 judgment after an order granting summary judgment in favor of respondents Omar and Kristina Moreno[1] and an April 16, 2025 postjudgment order overruling various objections to the summary judgment order.

In their summary judgment motion, the Morenos asserted one of Tilley's causes of action was time-barred by the one-year limitations period set forth in Code of Civil Procedure[2] section 366.2, subdivision (a). The superior court's rationale for granting summary judgment never addressed that affirmative defense. On appeal, the Morenos again raise the foregoing section 366.2, subdivision (a) argument. Following de novo review, as we are not bound by the trial court's stated reasons and may affirm summary judgment on different grounds, we conclude summary judgment was appropriate because Tilley's entire action did not commence within the relevant time period and affirm the April 2, 2025 judgment. Given this disposition, we dismiss Tilley's appeal from the April 16, 2025 postjudgment order as moot.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. Tilley's original petition

On November 1, 2018, Tilley—the successor trustee of the Miller-Pitcher Family Trust ("M-P Trust")—filed a Probate Code section 850, subdivision (a)(3)(B) petition against (1) Omar as an individual, the successor trustee of the Thomas E. Miller Family Trust, and a trustee of the Moreno Family Trust; and (2) Kristina as an individual and a trustee of the Moreno Family Trust. Specifically, Tilley sought an order transferring the Morenos' interests in particular real property assets to the M-P Trust; directing the

---

[1] In this opinion, we refer to an individual defendant by his or her given name and defendants collectively as the Morenos.

[2] Unless otherwise indicated, subsequent statutory citations refer to the Code of Civil Procedure.

Morenos to pay "$1,700,000 in value which the M-P Trust has been shortchanged due to misdealing by the former Trustee, THOMAS E. MILLER"; removing Omar as property manager; and awarding damages "twice the value of the property recovered as well as reasonable attorney's fees and costs" pursuant to Probate Code section 859.

The Morenos filed a demurrer. The superior court initially struck the demurrer as untimely and entered an order granting Tilley's petition, but it subsequently granted the Morenos' motion for discretionary relief under section 473, subdivision (b) and vacated the foregoing order. (See *Tilley v. Moreno* (May 24, 2021, F080040) [nonpub. opn.].) Tilley appealed and we affirmed the ruling. (See *ibid.*) Thereafter, the superior court sustained the Morenos' demurrer with leave to amend the petition. The court detailed:

> "The action before the Court seeks recovery of real property and such recovery as pled is time barred by [section] 318[3] because the complaint fails to state that [Tilley] was seized or possessed of the real property in the past five years. Counsel [for Tilley] has offered a theory that they may be able to ple[a]d fraud in the case. If that is the case, [Tilley] is granted leave to amend the petition to allege any valid defense to the statute of limitations. The Court agrees with counsel [for the Morenos] that fraud must be particularly pled. The Court will look for an amended pleading."

## II. Tilley's amended petition

On January 27, 2022, Tilley filed an amended petition against the Morenos. She sought an order "directing return of real property, minority interests in limited partnerships, and misappropriated funds based on breach of fiduciary duty, concealment, and aiding and abetting breach of fiduciary duty" (boldface & capitalization omitted) as well as an order "removing Omar . . . as property manager" (boldface & some capitalization omitted).

---

[3] "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question, within five years before the commencement of the action." (§ 318.)

*a. Factual allegations*

Thomas E. Miller and his wife Joyce R. Pitcher created the M-P Trust on August 1, 2003. Under its terms, upon the death of the first settlor, three subtrusts would be created: a survivor's trust, a bypass trust, and a qualified terminable interest property trust. The bypass trust and the qualified terminable interest property trust would be "irrevocable and unamendable" and funded with the decedent's assets, including his or her separate property.

Pitcher died on November 17, 2004. At the time of her death, she had separate property worth approximately $5 million, including interests in the following real properties and entities: 414 Witmer, Los Angeles, California; 457 Witmer, Los Angeles, California; 461 Witmer, Los Angeles, California; 439 Bonnie Brae Apartments, L.P.; 427 Westlake Apartments, L.P.; and Spaulding Apartments, LLC. On July 31, 2008, by court decree, these interests were distributed to Miller as the trustee of the M-P Trust. Meanwhile, Miller created the Thomas E. Miller Family Trust on October 6, 2006.

Instead of funding the bypass trust and/or the qualified terminable interest property trust, Miller—via quitclaim deeds recorded on or around October 7, 2008— conveyed to the Morenos as trustees of the Moreno Family Trust undivided 50 percent interests in 414 Witmer, Los Angeles, California; 457 Witmer, Los Angeles, California; and 461 Witmer, Los Angeles, California. The quitclaim deeds, which identified the grantor as "Thomas E. Miller, as Trustee of the Miller-Pitcher Family Trust dated August 1, 2003" (boldface omitted), stated: " 'This is a bonafide gift and the grantor received nothing in return, R & T 11911.[4]' " Concurrently recorded were deeds of trust against 414 Witmer Street and 457–461 Witmer Street in the amounts of $600,000 and $1,300,000, respectively. On December 23, 2011, Miller and the Morenos sold their interests in the Witmer properties for $2,880,028. At some point, the Morenos claimed

---

**4** "R & T 11911" likely refers to Revenue and Taxation Code section 11911.

40 percent interests in 439 Bonnie Brae Apartments, L.P.; 427 Westlake Apartments, L.P.; and Spaulding Apartments, LLC.[5]

On April 12, 2012, Miller and the Morenos purchased 427 Western, Glendale, California for $1,975,000. Miller was granted an undivided 60 percent interest therein whereas the Morenos were granted an undivided 40 percent interest therein. On June 18, 2012, Miller and the Morenos purchased 2260–2262 ½ West Adams Boulevard, Los Angeles, California for $743,000. Similarly, Miller was granted an undivided 60 percent interest therein whereas the Morenos were granted an undivided 40 percent interest therein. 427 Western, Glendale, California and 2260–2262 ½ West Adams Boulevard, Los Angeles, California were refinanced in mid-2015 in the amounts of $1,760,000 and $725,000, respectively.

On March 25, 2016, Miller executed (1) a "NOTICE OF DISTRIBUTION" (boldface omitted), distributing to himself "as beneficiary of the Survivor's Trust" all assets of this subtrust; and (2) an "ASSIGNMENT OF ASSETS" (boldface omitted), assigning assets from the survivor's trust to himself as trustee of the Thomas E. Miller Family Trust.

Miller died on August 23, 2016. Approximately one month later, Miller's sister Tilley received documents pertaining to the M-P Trust from Omar. At that time, she first became aware of the existence of the M-P Trust and learned she was designated as the successor trustee and residual beneficiary thereof. Based on conversations with Miller prior to his death, Tilley believed Omar "had served as a caretaker/handyman for property that was under [Miller's] management." She did not know or had any reason to

---

[5] The amended petition reads: "Upon information and belief, the Morenos have documentation establishing the transfer of these interests [in 439 Bonnie Brae Apartments, L.P.; 427 Westlake Apartments, L.P.; and Spaulding Apartments, LLC] to the Morenos or their Trust. [Tilley] believes that the way this ownership was transferred was from THOMAS E. MILLER as Trustee of the M-P Trust (the court-ordered recipient) to the Morenos."

know Miller and Omar "had any business relationship beyond [Omar's] caretaker role" and the Morenos "ha[d] any interest [in] the M-P Trust, or in any of its assets."

*b. Stated causes of action*

Under the heading "**FIRST CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY**," Tilley asserted:

"44.     THOMAS MILLER owes what is known as a fiduciary duty to BONNIE TILLEY as beneficiary of the M-P Trust.  A fiduciary duty imposes on a trustee a duty to act with the utmost good faith in the best interests of the beneficiaries of the trust.

"45.     TILLEY was harmed by MILLER'S failure to use reasonable care in his role as trustee of the M-P Trust.  MILLER failed to act as a reasonably careful trustee, as set forth in [the factual allegations].

"46.     MILLER'S actions resulted in material harm to TILLEY and the other beneficiaries of the trust.

"47.     MILLER'S conduct was a substantial factor in causing harm to TILLEY and the other beneficiaries.

"48.     MILLER'S conduct amounted to a breach of his fiduciary duty to TILLEY and the other beneficiaries.

"49.     Although the foregoing allegations reveal that MILLER'S and MORENOS' conduct occurred years ago, TILLEY did not discover MILLER'S breach of fiduciary duty until after becoming successor trustee and retaining counsel to perform its investigation as aforesaid.

"50.     Counsel's investigation first revealed the nature and extent of Miller's breaches of fiduciary duty, resulting in the improper transfer of assets to MORENOS.

"51.     Only after TILLEY received the Trust documents and undertook investigation through counsel commencing on or about October, 2016 (less than three (3) years from the filing date of the Petition) did TILLEY realize that MILLER had acted improperly.

"52.     TILLEY could not have reasonably learned that MILLER had acted improperly at any earlier time because MILLER deliberately concealed his actions from TILLEY and the other beneficiaries.

6.

"53. TILLEY was unaware of any actions that could reasonably have made her aware of MILLER'S breach of fiduciary duty prior to her counsel's investigation.

"54. TILLEY timely filed the instant petition within three years of discovery of the acts and/or omissions of Miller under . . . [s]ection 338[, subdivision ](d)."

Under the heading "**SECOND CAUSE OF ACTION FOR FRAUD – CONCEALMENT**," Tilley asserted:

"56. MILLER and TILLEY were trustee and beneficiary, respectively, of the M-P Trust.

"57. MILLER intentionally failed to disclose certain facts to TILLEY, as set forth in [the factual allegations].

"58. MILLER intentionally failed to disclose these facts that were known only to him and that TILLEY could not have discovered with reasonable care at any time prior to becoming successor trustee.

"59. TILLEY did not know of and was unaware of the concealed facts and transactions.

"60. MILLER intended to deceive TILLEY and the other beneficiaries by concealing the facts set forth in [the factual allegations].

"61. Had TILLEY learned of Miller's actions and his improper disposition of Trust assets, TILLEY reasonably would have immediately sought the pursuit of any and all of her civil legal remedies.

"62. As a direct and proximate result of Miller's actions as aforesaid, TILLEY was harmed in that the trust assets that were supposed to be in estate were improperly transferred by Miller.

"63. MILLER's concealment was a substantial factor in causing TILLEY[]'s harm."

Under the heading "**THIRD CAUSE OF ACTION – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AND REMOVING [OMAR] AS PROPERTY MANAGER AGAINST MORENOS**," Tilley asserted:

"65.    Part of MILLER'S breach of fiduciary duty consisted of transferring property of the M-P Trust to the MORENOS without consideration.

"66.    More specifically, on or about October 7, 2008, Quitclaim Deeds recorded on 414 Witmer Street, Los Angeles, California and on 457 and 461 Witmer Street, Los Angeles, California, from Thomas E. Miller, Trustee of Miller-Pitcher Family Trust dated August 1, 2003, to Thomas E. Miller, Trustee of the Miller-Pitcher Family Trust dated August 1, 2003, as to an undivided 50% interest and Omar Moreno and Kristina Moreno, Trustees of Moreno Family Trust dated April 26, 2006, as to an undivided 50% interest, all as Tenants in Common. . . .  Concurrently with the transfer of the Witmer Properties to Thomas E. Miller, Trustee of the Miller-Pitcher Family Trust dated August 1, 2003, and Omar Moreno and Kristina Moreno, Trustees of Moreno Family Trust dated April 26, 2006, on October 7, 2008, a new deed of trust was recorded on 414 Witmer Street by MILLER/MORENO in the amount of $600,000.

"67.    The Morenos knew or, with reasonable care, should have known that they were acquiring property belonging to a trust without providing any consideration.

"68.    The deeds transferring property, and the documents transferring minority interests in limited partnerships, demonstrated that the real property and partnership interests were owned by the M-P Trust.

"69.    Although the MORENOS may have been caretakers of some of the properties, upon information and belief, at no time did they provide fair and sufficient consideration to acquire a substantial ownership interest in any such property.

"70.    The language contained in the deeds transferring the property to the Morenos put them on notice that they were acquiring assets of a trust, with the knowledge that they were not providing any consideration for the transfer.

"71.    For example, the September 19, 2006 deed transferring of 50% 414 Witmer Street states:  'Thomas E. Miller, **as Trustee of the Miller-Pitcher Family Trust** dated August 1, 2023 . . . do(es) hereby remise, release and forever quitclaim to . . . Omar Moreno and Kristina Moreno, Trustees of the Moreno Family Trust Dated April 26, 2006, as to an undivided 50% interest. . .'

8.

"72.    The Witmer street deed further states:  'This is a bonafide gift and the **grantor received nothing in return**, R & T 11911.'

"73.    The aforesaid language put the MORENOS on notice that the interest in the property they received had belonged to a trust, and that MILLER was giving that interest in the property to them in his capacity as trustee of a trust for free!!

"74.    The property was not being transferred from MILLER personally directly to the MORENOS.  Any reasonable person would have questioned such transfer(s).

"75.    In addition, TILLEY acquired the trust documents directly from the Morenos, leading TILLEY to reasonably believe that the Morenos had knowledge of the terms of the trust and Miller's improper disposition of the trust assets.

"76.    In addition to acquiring such interests in properties, [t]he MORENOS thus further aided and abetted MILLER'S breach of fiduciary duty by, upon information and belief, creating their own trust, and then transferring their interest in such properties to their trust.

"77.    They further aided and abetted Miller's breach by improperly acquiring minority interests in the limited partnerships . . . , without providing any consideration, thereby serving to further conceal MILLER'S improper acts.

"78.    If permitted to engage in discovery, [Tilley] in good faith expects to elicit additional facts currently best known by the Morenos, who, upon information and belief, acted in concert with MILLER in misappropriating trust assets to the substantial detriment of Petitioner TILLEY as well as all other beneficiaries of the M-P Trust.  [¶] . . . [¶]

"79.    . . . Petitioner, as Trustee of the subtrusts established under the M-P Trust, has a claim to the interests in the real property assets described [in the factual allegations].

"80.    As set forth above, the M-P subtrusts were not funded.  Had they been properly funded, all of JOYCE R. PITCHER's separate property probate assets should have been funded into the [qualified terminable interest property] or Bypass Trusts, per the trust terms.

"81.    If the Witmer properties had been left as assets of these two subtrusts . . . , they would have appreciated in accordance with the real estate market from the time of the death of JOYCE R. PITCHER until the

present time. Had that occurred and no additional encumbrances were placed on the properties, a conservative estimate of the value of these properties today would be $5,700,000 less the unpaid balance of loans on the properties.

"82. Loans taken out in 1998 had a face value of $1,395,000. It could be argued that these loans would have been paid off as of the current date, but using a rough estimate of an outstanding loan balance of $1,000,000, one could estimate a current equity value of the Witmer properties of $4,700,000.

"83. Per formal appraisals of the value of these properties on March 1[,] 2018, they had a total net equity value of approximately $3,000,000. In order to be made whole, the 40% interest in the properties described above which have been improperly transferred to the Moreno Trust should be returned to the M-P Trust.

"84. In addition, the amount of $1,700,000 in value which the M-P Trust has been shortchanged due to misdealing by the former Trustee, THOMAS E. MILLER, should be repaid to Petitioner as the Successor Trustee of the M-P Trust.

"85. As set forth [in the factual allegations], new loans were taken out by MILLER/MORENO on the Witmer properties as well as on the Adams and Western properties, from which MILLER/MORENO received cash proceeds. If these proceeds were combined, they would equal at least $1,636,000.

"86. In addition to the improper transfers, the [M-P] Trust has been damaged in the amount of at least $1,700,000 for losses suffered by the MILLER/MORENO mis dealings."

Under the heading "**PETITION TO REPLACEMENT OF PROPERTY MANAGER**," Tilley sought an order removing Omar Moreno as the "*de facto*" property manager of 427 Western, Glendale, California and 2260-2262 ½ West Adams Boulevard, Los Angeles, California, alleging Omar "has been paying himself an amount equal to approximately four times 'industry standard.' " Tilley reiterated her petition was timely under section 338, subdivision (d) because she "did not discover MILLER'S breach of fiduciary duty, aided and abetted by the MORENOS, until investigation by counsel" from

10.

approximately October 2016 through October 2018. Finally, Tilley sought double damages, attorneys' fees, and costs under Probate Code section 859.

### III. The Morenos' summary judgment motion

On November 20, 2023, the Morenos filed a motion for summary judgment. At the outset, they pointed out "[t]he first cause of action alleges breach of fiduciary duty against Tom Miller" and "[t]he second cause of action alleges the tort of concealment against Tom Miller," but "[n]either are plead against the Morenos in any capacity in which they have been sued." Regarding Tilley's third cause of action for aiding and abetting, the Morenos contended: (1) the terms of the M-P Trust empowered Miller to convey the assets at issue; (2) the evidence did not establish all the elements of the claim; and (3) section 366.2, subdivision (a) barred the claim altogether because Miller died on August 23, 2016, and Tilley did not file a petition within one year of his death. In addition, the Morenos argued Omar's removal as property manager was not authorized in a Probate Code proceeding. Attached in support of the motion was a separate statement of undisputed material facts, which stated the following: Miller died on August 23, 2016, and Tilley's petition "was initially filed on November 1, 2018"[6]; and the Morenos (1) "did not give material assistance to Tom Miller in his conveyance of 414, 457 and 461 Witmer Street, Los Angeles, California from the [M-P] Trust by deed on October 7, 2008"; and (2) "did not give material assistance to Tom Miller in his conveyance [of] interests in 439 Bonnie Brae Apartments, LP, 427 Westlake Apartments, LP and Spaulding Apartments, LLC from the [M-P] Trust while he was trustee."[7]

---

[6] In her response to the Morenos' separate statement, Tilley did not dispute these facts.

[7] In support of these facts, Omar and Kristina each provided declarations. In her response to the Morenos' separate statement, Tilley objected to these facts. The superior court later overruled these objections.

11.

## IV. Tilley's opposition and the Morenos' reply thereto

On January 23, 2024, Tilley filed an opposition to the Morenos' summary judgment motion. Among other things, she maintained section 338, subdivision (d)'s three-year limitations period governed and intimated section 366.2, subdivision (a) did not apply because Miller's personal liability was not implicated.

On February 2, 2024, the Morenos filed their reply. Among other things, they countered section 366.2, subdivision (a) applied because Tilley's claims concerned Miller's personal liability.

## V. The superior court's summary judgment rulings

In a minute order dated March 8, 2024, the superior court granted the Morenos' summary judgment motion. The court explained:

> "On the motion for summary adjudication the court finds that Tom Miller did breach his fiduciary duty to Bonnie Tilley. Based on this finding, in order to prevail on her claim of aiding and abetting, Bonnie Tilley was required to prove that the Morenos: (1) had actual knowledge of the breach of fiduciary duties; (2) substantially assisted or encouraged Tom Miller's breach of fiduciary duty; and (3) engaged in conduct that was a substantial factor in causing harm to Bonnie Tilley. [Citations.]

> "The court finds that Bonnie Tilley failed to establish sufficient facts showing that the Morenos assisted or encouraged Tom Miller's breach of fiduciary duty and further finds that the Morenos' conduct in this matter was not a substantial factor in causing harm to [Tilley] under the third cause of action.

> "In addition to the foregoing, the court further finds that the Morenos['] conduct did not cause any harm to [Tilley] under the first or second causes of action set forth in the amended petition."

The court did not address the question of whether Tilley's action was time-barred.

On March 11, 2024, Tilley filed various objections to the March 8, 2024 minute order, which included a contention the superior court failed to rule on her earlier objections to the Morenos' separate statement (see *ante*, fn. 7), and asked the court to

clarify or reconsider its ruling. In a minute order dated August 14, 2024, the superior court pronounced:

> "On the motion for summary judgment/adjudication the court finds that Tom Miller did breach his fiduciary duty to Bonnie Tilley. Based on this finding, in order to prevail on her claim of aiding and abetting, Bonnie Tilley was required to prove that the Morenos: (1) had actual knowledge of the breach of fiduciary duties; (2) substantially assisted or encouraged Tom Miller's breach of fiduciary duty; and (3) engaged in conduct that was a substantial factor in causing harm to Bonnie Tilley. [Citations.]
>
> "In support of the motion for summary judgment/adjudication the Morenos allege that there was no causation on the part of the Morenos. The Morenos assert that neither Omar . . . nor Kristina . . . provided any material assistance to Tom Miller in his conveyance of the subject assets, neither was such assistance alleged in the petition. [¶] . . . [¶]
>
> "As to the third cause of action the court finds that the trust instrument authorized Tom Miller to convey assets with or without consideration and the evidence did not establish any causation on the part of the Morenos for the damages alleged to have been suffered by Bonnie Tilley. The court further finds that the evidence presented, including the declarations of Omar . . . and Kristina . . . , established that they did not participate in the alleged breaches of duty by Tom Miller.
>
> "Finally, the evidence presented by [Tilley] was not sufficient to establish the substantial participation of the Morenos in the acts of Tom Miller as would be required to sustain liability for aiding and abetting.
>
> "The court finds insufficient evidence to justify removal of the Morenos as property manager under the fourth cause of action.
>
> "The court finds insufficient evidence to establish the Moreno[s'] liability under the first or second causes of action and further finds that neither the first nor the second cause of action were directed against the Morenos, or either of them, individually."[8]

---

[8] Notwithstanding this analysis, the court then ordered the Morenos "to prepare the order *denying* the motion for summary judgment/adjudication." (Italics added.) This was a typographical error. The record contains a subsequent April 3, 2025 minute order that incorporated the substance of the August 14, 2024 order with one exception: the

13.

The court overruled Tilley's objections to the Morenos' separate statement (see *ante*, fn. 7) but did not consider the other objections filed March 11, 2024. Again, the court did not address the question of whether Tilley's action was time-barred.

On August 20, 2024, Tilley filed various objections to the August 14, 2024 minute order and again asked the superior court to clarify or reconsider its ruling. In a minute order dated August 21, 2024, the court incorporated its August 14, 2024 ruling and scheduled a case status conference on October 4, 2024. On October 1, 2024, it signed a summary judgment order prepared by the Morenos' attorney. At the October 4, 2024 conference, the court acknowledged the order "was signed without knowledge of [Tilley's] objection[s]" and vacated it. Following counsels' arguments, the court indicated it would "review the objections."

On March 13, 2025, the superior court signed an order granting summary judgment. Its rationale was lifted verbatim from its August 14, 2024 minute order. The judgment denying Tilley's amended petition was entered April 2, 2025. In a minute order dated April 16, 2025, the court addressed and overruled Tilley's objections filed August 20, 2024.

## DISCUSSION

### I.   Overview of summary judgment law[9]

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (§ 437c, subd. (a)(1).) Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite

Morenos were directed "to prepare the order *granting* the motion for summary judgment/summary adjudication." (Italics added.)

[9] Summary judgment is generally available in proceedings governed by the Probate Code. (See Prob. Code, § 1000, subd. (a); see also *Key v. Tyler* (2019) 34 Cal.App.5th 505, 521 ["widespread use of the summary judgment procedure in probate matters"].)

their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); see *Lee v. Marchetti* (1970) 4 Cal.App.3d 97, 99 [" 'The salient philosophy behind this procedural device is to provide a method for the prompt disposition of actions and proceedings which have no merit and in which there is no triable material issue of fact [citation].' " (italics omitted)].)

A summary judgment motion "shall be supported by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken. The supporting papers shall include a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed. Each of the material facts stated shall be followed by a reference to the supporting evidence." (§ 437c, subd. (b)(1).) An opposition to a summary judgment motion "shall consist of affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (*Id.*, subd. (b)(2).) "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence." (*Id.*, subd. (b)(3).)

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably

15.

deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (§ 437c, subd. (c).)

A defendant seeking summary judgment bears an initial burden to produce evidence demonstrating either one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849, 854–855.) "The expiration of the applicable statute of limitations is one such complete defense." (*Genisman v. Carley* (2018) 29 Cal.App.5th 45, 49.) "The burden on a defendant moving for summary judgment based upon the assertion of an affirmative defense is heavier than the burden to show one or more elements of the plaintiff's cause of action cannot be established." (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289.) "Instead of merely submitting evidence to negate a single element of the plaintiff's cause of action, . . . 'the defendant has the initial burden to show that undisputed facts support each element of the affirmative defense' [citations]." (*Ibid.*, italics omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878–879 [preponderance of the evidence standard of proof].)

If the defendant makes a prima facie showing,[10] then the burden of production "shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).) Where the defendant raises an affirmative defense, "the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense after the defendant meets the burden of establishing all the elements of the affirmative defense." (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484; see *Vahle v. Barwick* (2001) 93 Cal.App.4th 1323, 1328 ["The plaintiff need not produce any evidence until the defendant has established every element of his or her defense."].) "The plaintiff . . . shall not rely upon

---

[10] "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (*Aguilar*, *supra*, 25 Cal.4th at p. 851.)

16.

the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2); accord, *Aguilar*, *supra*, 25 Cal.4th at p. 849.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850, fn. omitted.) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion[11] that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Ibid.*, fn. omitted.)

## II.     Standard of review

"When reviewing the grant of a motion for summary judgment or summary adjudication, we independently consider whether a triable issue of material fact exists and whether the moving party is entitled to summary judgment or adjudication as a matter of law." (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 631, fn. omitted.) "In other words, we must assume the role of the trial court and reassess the merits of the motion. [Citation.] In doing so, we will consider only the facts properly before the trial court at the time it ruled on the motion. [Citation.]" (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601.)

"We apply the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond. Second, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in the moving party's favor. When a summary judgment motion prima facie justifies a judgment, the

---

[11] Whereas a burden of production entails only the presentation of evidence, a burden of persuasion entails the establishment of a requisite degree of belief by way of such evidence. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

third and final step is to determine whether the opposition demonstrates the existence of a triable issue of material fact." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493–494.) "Our obligation is ' " 'to determine whether issues of fact exist, not to decide the merits of the issues themselves.' " ' [Citation.] We must ' "consider all of the evidence" and "all" of the "inferences" reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party.' [Citations.]" (*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 900.) " 'We are not bound by the trial court's stated reasons or rationale. Instead, we review the summary judgment without deference to the trial court's determination of questions of law.' [Citation.]" (*McGarry v. Sax* (2008) 158 Cal.App.4th 983, 994; see *Stoltenberg v. Newman* (2009) 179 Cal.App.4th 287, 293 (*Stoltenberg*) ["[W]e may affirm the summary judgment on a ground that was not the basis of the trial court's ruling."].)

## III. Analysis

    a. *Tilley's appeal from the superior court's April 2, 2025 judgment after an order granting summary judgment*

        i. <u>Summary judgment was proper because Tilley's action did not commence within section 366.2, subdivision (a)'s one-year limitations period</u>.

In their summary judgment motion, the Morenos asserted the aiding-and-abetting cause of action was time-barred by section 366.2, subdivision (a)'s one-year limitations period. They did not make the same contention with respect to the other causes of action. The superior court never addressed the applicability of section 366.2, subdivision (a). Nonetheless, following de novo review, if we find this statute of limitations barred all of Tilley's claims, we may affirm summary judgment on this basis. (See *Stoltenberg*, *supra*, 179 Cal.App.4th at p. 293.)

Section 366.2, subdivision (a) provides:

"If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."[12]

The affirmative defense of the statute of limitations "exists to promote the diligent assertion of claims, ensure defendants the opportunity to collect evidence while still fresh, and provide repose and protection from dilatory suits once excess time has passed." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) "The duration of the limitations period marks the legislatively selected point at which, for a given claim, these considerations surmount the otherwise compelling interest in adjudicating on their merits valid claims." (*Ibid.*)

"A defendant moving for summary judgment based on the affirmative defense of the statute of limitations carries its burden by presenting evidence establishing that the plaintiff's claim is time-barred. [Citation.] 'It then falls to plaintiff[] to counter with evidence creating a dispute about a fact relevant to that defense.' [Citation.] That is, the plaintiff must submit evidence that would allow a 'reasonable trier of fact [to] find in plaintiff['s] favor on the statute of limitations issue.' [Citations.] 'If defendant[] presented evidence establishing the defense and plaintiff[] did not effectively dispute any of the relevant facts, summary judgment was properly granted. [Citation.]' [Citation.]" (*Genisman v. Carley*, *supra*, 29 Cal.App.5th at p. 49.)

In her amended petition, Tilley brought causes of action for breach of fiduciary duty and fraudulent concealment, both of which arise in tort. (See *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1153 [breach of fiduciary duty]; *Levine v. Blue Shield of*

---

[12] Section 366.2, subdivision (b) enumerates limited circumstances for tolling, none of which were raised by Tilley.

*California* (2010) 189 Cal.App.4th 1117, 1126–1127 [fraudulent concealment].) She alleged Miller—prior to his death and in his capacity as trustee of the M-P Trust— breached his fiduciary duty to her and other beneficiaries by misappropriating various assets belonging to the M-P Trust and intentionally concealed facts related to his wrongdoing.[13] In other words, "the substance of the claims . . . is for the personal misconduct of the settlor/trustee on behalf of . . . the trust, that was completed entirely before the settlor/trustee died, and for which the settlor/trustee could have been held personally liable." (*Stoltenberg*, *supra*, 179 Cal.App.4th at p. 296; see *Estate of Yool* (2007) 151 Cal.App.4th 867, 875 (*Yool*) ["[W]e must consider whether the claim framed by the petition concerned the *personal liability* of the decedent."].)[14]

---

[13] We recognize—as did the superior court—the factual allegations underlying these two causes of action pertained to the acts and omissions of Miller, not the Morenos (the only defendants named in the amended petition). (See *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 ["[T]he burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint* . . . ."].)

[14] At oral argument, counsel for Tilley suggested the facts of the instant case were analogous to those in *Yool*, *supra*, 151 Cal.App.4th 867. We disagree.

In *Yool*, the decedent and Nancy Mattingly (one of her daughters) acquired record title to a residence in Oakley in late 1993. (*Yool*, *supra*, 151 Cal.App.4th at pp. 870–871.) The deed of reconveyance did not specify the nature or extent of their respective interests. (*Id.* at p. 871.) The decedent's interest in the property was not placed in her trust prior to her death in 2002. (*Id.* at pp. 870–871.) Following the decedent's passing, a special administrator filed a petition under Probate Code section 850 to determine title to the property. (*Yool*, at p. 871.) Mattingly asserted "the facts supported imposition of a resulting trust in her favor." (*Ibid.*) Two of Mattingly's siblings moved for judgment on the pleadings on the basis the petition was untimely under section 366.2. (*Yool*, at p. 871.) The probate court ruled the evidence supported the imposition of a resulting trust in Mattingly's favor and section 366.2 did not apply as a matter of law. (*Yool*, at p. 871.)

Division Four of the First District Court of Appeal affirmed the order. (*Yool*, *supra*, 151 Cal.App.4th at pp. 870, 878.) In finding section 366.2 inapplicable, the appellate court held: (1) "the case framed by the petition" "called for imposition of a resulting trust" (*Yool*, at p. 875), which "arises by operation of law" "and does not

A cause of action that "survives" is one "that might have been brought against the decedent while living." (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 554 (*Ferraro*); see *Yool*, *supra*, 151 Cal.App.4th at p. 876 ["Section 366.2 specifically contemplates an action that may be brought against a person prior to his or her death."].) "One cannot properly say that a cause of action 'survives' a decedent if it only comes into existence upon the decedent's death (or to be very precise, upon the decedent's having died)." (*Ferraro*, *supra*, at p. 553; see *ibid.* ["A cause of action *exists* (or 'arises') when all the elements it comprises have come into being so that an action may be brought."].) " '[A]ccrual' refers to the moment at which the statute of limitations begins to run against the cause of action. [Citation.] Ordinarily a cause of action accrues when it comes into existence. [Citations.] But accrual can sometimes follow existence by a substantial period. The most familiar example is a cause of action that does not accrue until the plaintiff *discovers*, or should discover, its existence. [Citations.]" (*Id.* at pp. 553–554.) "Section 366.2's use of the term 'survives' can readily be harmonized with its application to claims 'whether accrued or not accrued' by applying the latter to reach situations where the cause of action *existed* while the decedent was alive, but had not yet *accrued* for limitations purposes—as where the decedent had perpetrated a fraud of which the plaintiff was unaware. In such a case, the decedent's death triggers the limitations period prescribed by the statute, regardless of any accrual rule otherwise governing the claim. The result is to require would-be claimants to seek out and assert any claims they might

---

implicate the personal liability of the purported trustee" (*id.* at pp. 875–876); and (2) "[u]nder the facts of this case there was no cause of action, accrued or not yet accrued, that existed at the time of decedent's death within the sense of section 366.2 and hence no action that could have been commenced on that cause" (*id.* at pp. 876–877).

Here, by contrast, Tilley's petition raised tort claims implicating Miller's personal liability that centered on acts and omissions occurring before his death. (See *ante*, at pp. 19–20.)

21.

have against the decedent within a year of his death, or suffer the loss of those claims." (*Id.* at p. 554.)

Whether the causes of action survived Miller's death is not in question: the alleged misconduct underlying those claims occurred before Miller died (see *Stoltenberg*, *supra*, 179 Cal.App.4th at p. 296) and the claims could have been brought against him if he were still alive (see *Ferraro*, *supra*, 161 Cal.App.4th at p. 554).

In the amended petition, Tilley stated she did not become aware of Miller's alleged misconduct until her counsel conducted an investigation from approximately October 2016 through October 2018. She asserted section 338, subdivision (d)'s three-year limitations period governed.[15] However, the parties do not dispute Miller died on August 23, 2016, well before the expiration of that limitations period.

Since an action arising in tort was brought on Miller's personal liability, Miller died before the expiration of what Tilley asserted to be the applicable limitations period, and the causes of action for breach of fiduciary duty and fraudulent concealment survived Miller's death, the time period for commencing the action was one year from the date of death under section 366.2, subdivision (a). As a result, contrary to Tilley's belief, she needed to raise the foregoing causes of action within one year of Miller's death, not three years after she discovered his malfeasance. (See § 366.2, subd. (a) ["[A]n action may be commenced within one year after the date of death, *and the limitations period that would have been applicable does not apply*." (italics added)]; *Ferraro*, *supra*, 161 Cal.App.4th at p. 554 [decedent's death triggers § 366.2, subd. (a) "regardless of any accrual rule otherwise governing the claim"]; see also *1305 Ingraham, LLC v. City of Los Angeles* (2019) 32 Cal.App.5th 1253, 1266 [" ' "[A] specific statute of limitations takes

---

[15] "Within three years[,] [¶] . . . [¶] . . . [a]n action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (§ 338, subd. (d).)

22.

precedence over a general one, even though the latter ' "would be broad enough to include the subject to which the more particular provision relates." ' " ' "].)

Tilley also brought a cause of action against the Morenos for aiding and abetting Miller's breach of fiduciary duty,[16] again implicating Miller's personal liability. (See *Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 579 ["Liability based on an aiding and abetting . . . theory is . . . 'derivative,' i.e., liability is imposed on one person for the direct acts of another."].) "The statute of limitations for a cause of action for aiding and abetting a tort generally is the same as the underlying tort." (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1478; see, e.g., *id.* at p. 1479 ["[T]he statute of limitations for aiding and abetting a breach of fiduciary duty is the same as the statute of limitations for breach of fiduciary duty."].) As established, the limitations period for bringing a cause of action for Miller's breach of fiduciary duty was within one year of his death on August 23, 2016. (See § 366.2, subd. (a).) Therefore, the same deadline applied for bringing a cause of action for aiding and abetting that tort.

The parties additionally do not dispute the material fact Tilley's petition "was initially filed on November 1, 2018," more than two years after Miller's death.[17] Because Tilley's action did not commence within section 366.2, subdivision (a)'s one-year limitations period, summary judgment was proper.

---

[16] On appeal, Tilley emphasizes "the issue of Omar's removal [as property manager] was part of the third cause of action."

[17] Because the original petition was untimely, Tilley cannot invoke the relation-back doctrine. (See *Curtis Engineering Corp. v. Superior Court* (2017) 16 Cal.App.5th 542, 548 ["Under the relation-back doctrine, a court will ordinarily deem a later-filed pleading to have been filed at the time of an earlier complaint if the amended complaint is based on the same general set of facts. [Citation.] Where the statute of limitations has expired before the filing of an amended complaint, unless an amended complaint relates back to a timely filed original complaint, the amended complaint will be time-barred."].)

ii. Tilley's contentions on appeal are either moot or unavailing.

Tilley raises numerous arguments challenging the superior court's stated reasons for granting summary judgment. We need not address them because our independent review establishes the validity of summary judgment on an alternative ground, i.e., section 366.2, subdivision (a)'s one-year statute of limitations. (See *Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1057 ["The de novo standard for appellate review of an order granting summary judgment frequently means the lack of a proper order constitutes harmless error."].)

Tilley points out "summary judgment is a drastic remedy" and "any doubts about [its] propriety" "must be resolved in favor of the party opposing the motion." Though this is an accurate statement of the law (see, e.g., *Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 304), in view of undisputed material facts and the amended pleading, there are no doubts as to the propriety of granting summary judgment in the instant case. (See *ante*, at pp. 18–23.)

b. *Tilley's appeal from the April 16, 2025 postjudgment order*

"A case is moot when any ruling by [the reviewing] court can have no practical impact or provide the parties effectual relief." (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888.) " 'When no effective relief can be granted, an appeal is moot and will be dismissed.' [Citation.]" (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214; see *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8 [" 'A "reviewing court has inherent power, on motion or its own motion, to dismiss an appeal which it cannot or should not hear and determine." ' "].)

With respect to her appeal from the superior court's April 16, 2025 postjudgment order overruling various objections to the order granting summary judgment, Tilley contends: (1) the rulings on the objections were untimely; and (2) the objections should not have been overruled. Said objections challenged the court's stated reasons for

24.

granting summary judgment.[18]  Assuming, arguendo, these rulings were untimely and erroneous, Tilley's requested remedy, i.e., reversal of summary judgment, would be unavailable because our independent review establishes the validity of summary judgment on an alternative ground, i.e., section 366.2, subdivision (a)'s one-year statute of limitations.  As no effectual relief could be provided, this appeal is moot and shall be dismissed.

## DISPOSITION

The April 2, 2025 judgment is affirmed.  The appeal from the April 16, 2025 postjudgment order is dismissed as moot.  Costs on appeal are awarded to respondents Omar and Kristina Moreno.

DETJEN, Acting P. J.

WE CONCUR:

PEÑA, J.

DE SANTOS, J.

---

[18] Some of these objections are raised as separate arguments on appeal.